Henning Corporation v. Commissioner. Forrest K. Henning v. Commissioner.
Henning Corp. v. Commissioner
Docket Nos. 71539, 72442.
United States Tax Court
T.C. Memo 1960-90; 1960 Tax Ct. Memo LEXIS 197; 19 T.C.M. (CCH) 461; T.C.M. (RIA) 60090; May 9, 1960
Benjamin F. Kivnik, Esq., Western Saving Fund Building, Philadelphia, Pa., for the petitioners. Stephen P. Cadden, Esq., for the respondent. TIETJENS
Memorandum Opinion TIETJENS, Judge: These consolidated proceedings involve deficiencies in income tax and additions thereto for the years and in the amounts as set forth below: Fiscal Year Ended
Addition to Tax
Dkt. No.
Petitioner
August 31
Deficiency
Sec. 291(a)
71539
Henning Corporation
1953
$ 8,535.10
1954
9,092.94
$ 909.29
*198 Dkt. No.
Petitioner
Year
Deficiency
Sec. 294(d)(2)
72442
Forrest K. Henning
1952
$53,794.95
$3,224.42
1953
12,275.33
1954
9,544.64
The issues for decision are: (1) whether the liquidation of the predecessor of the Henning Corporation and the transfer of its assets to the Henning Corporation constituted a section 112(g)(1)(D) reorganization, thus giving those assets the same basis in the hands of the Henning Corporation as they had in the hands of its predecessor; (2) whether interest paid by the Henning Corporation on obligations assumed by it as part of the transaction referred to in Issue I was properly disallowed by respondent; (3) what was the amount of taxable gain, if any, realized by the Henning Corporation upon the sale by it of a portion of its land to the State of New Jersey for highway widening purposes; and (4) whether the payments by the Henning Corporation of principal and interest on obligations which it assumed as part of the transaction referred to in Issue I, constituted taxable dividends to petitioner Forrest K. Henning. All of the facts were stipulated, are so found, and are incorporated herein by this reference. *199 Petitioner Henning Corporation was, at all times material hereto, a corporation organized under the laws of New Jersey. It filed its Federal income tax returns for the fiscal years ended August 31, 1953 and 1954 with the district director of internal revenue at Camden, New Jersey. Petitioner Forrest K. Henning (hereafter referred to as Henning), a resident of Camden, New Jersey, filed individual Federal income tax returns for the calendar years 1952, 1953 and 1954 with the district director of internal revenue at Camden, New Jersey. Prior to August 28, 1952, Henning was interested in purchasing the business and assets of the Visscher Corporation which operated a Howard Johnson Restaurant. Alfred C. Ray, the sole stockholder of the Visscher Corporation, was interested in selling the business and assets, but only through the medium of a stock sale. On August 28, 1952, Henning, to acquire those assets, agreed with Ray to purchase all the Visscher Corporation's outstanding stock. The purchase price of the stock was to equal the fair market value of the corporate assets, less its liabilities, and was to be computed in the following manner. A basic price of $232,000 was allocated *200 between depreciable assets and land. To this amount was to be added the value of the cash, receivables, prepaid items, and inventories of the Visscher Corporation as of September 1, 1952. The resulting amount was then to be reduced by the accounts payable and the accrued expenses of that corporation as of the same date. These various items were to be computed as of September 1, 1952 by a certified public accountant, who was responsible for the preparation of all the financial statements, balance sheets and supporting data relative to the computation. In accordance with that directive, the accountant computed a tentative purchase price for the stock of $304,513.81, valuing the various assets of the Visscher Corporation at the close of business on August 31, 1952, in the following manner: Basic Price
$232,000.00
Additions to Basic Price: Cash on hand and in
bank
$77,007.86
Merchandise inventory
3,307.38
Inventory of uniforms
138.92
Note receivable
5,000.00 *
Prepaid insurance
4,165.22
Prepaid liquor license
500.00
Prepaid real estate taxes
724.64
90,844.02
$322,844.02
Deductions from Basic Price: Accounts payable
$11,600.70
Accrued payroll taxes
286.33
Accrued payroll
926.90
Accrued Federal income
tax (Current Year)
5,516.28
18,330.21
Tentative Purchase Price
$304,513.81
*201 On September 4, 1952, settlement was made on the stock purchase. The tentative purchase price was paid by Henning as follows: Deposit at execution of agreement on
August 28, 1952
$ 5,000.00
Cash at settlement
10,000.00
Cash deposited at settlement in es-
crow with the First Camden Na-
tional Bank and Trust Company
65,000.00
Demand promissory note dated Sep-
tember 4, 1952 payable to Alfred
C. Ray
75,000.00
Promissory note payable to Alfred
C. Ray in 84 equal monthly in-
stallments
149,513.81
$304,513.81 The first 4 installments on the promissory note were due and payable on January 5, 1953. The remaining 80 installments were *202 to be paid on a consecutive monthly basis. Each installment was with interest calculated on the unpaid balance at the rate of 5 per cent per annum. On November 17, 1952, the accountant certified to the parties his computation of the final purchase price of the stock to be $306,044.55, some $1,530.76 greater than the previously computed tentative purchase price. This difference resulted from certain adjustments made to the amounts which were to be added to or deducted from the basic price of $232,000. On December 5, 1952, Henning paid Ray the additional $1,530.76. At a meeting of the stockholders and directors of the Visscher Corporation held on September 5, 1952, resolutions were adopted calling for its liquidation, and the distribution of its assets to its stockholders as of the close of business on the preceding day. Accordingly, the Visscher Corporation transferred all its assets to Henning in consideration for the surrender by him of all its stock for cancellation, plus the assumption of all its liabilities. As of September 4, 1952, the market value of the assets of the Visscher Corporation, less its liabilities, was equal to the purchase price paid for its stock by Henning. *203 That value remained unchanged for at least three months. On December 4, 1952, Henning delivered to Ray his personal mortgage and bond in the principal sum of $149,513.81, secured by all the real estate and most of the personalty acquired by him on liquidation of the Visscher Corporation. The mortgage and bond were accepted in substitution of Henning's promissory note to Ray in like amount, and contained the same provisions relative to the payments of principal and interest. Immediately after execution and delivery of the mortgage and bond, Henning transferred all the assets acquired by him upon the Visscher Corporation's dissolution, save cash of $70,000 and a note receivable of $5,000 due from Alfred C. Ray, to the Henning Corporation, in exchange for its 800 shares of stock and its assumption of the following liabilities: Accounts payable
$ 6,469.62
Accrued payroll taxes
1,248.20
Accrued payroll
877.49
Accrued federal income tax
6,390.69
Mortgage payable
149,513.81
Loans payable
Hatfield National Bank &
Tr. Co.
17,000.00
Edward H. Fadeley
18,500.00
Frank J. Brown
4,500.00
$204,499.81 The 800 shares of stock issued to Henning constituted all *204 the corporation's outstanding stock. Pursuant to the provisions of the August 28 purchase agreement with Ray, Henning had assigned to Ray as security all the stock of the Visscher Corporation. As a condition precedent to the surrender of that stock, Ray required that the 800 shares of the Henning Corporation's stock be assigned to him as additional security for the payment of the mortgage and bond of $149,513.81. It was provided that these 800 shares were to be held by Ray until that indebtedness had been reduced to $100,000. This assignment was effected by Henning on December 4, 1952. Among the assets received by the Henning Corporation in the December 4 exchange was a franchise contract with the Howard D. Johnson Company. Pursuant to his August 28 agreement with Ray, Henning covenanted to continue the operation of the restaurant business under that franchise "in a first class manner" until full payment of the purchase price with interest had been made. Henning further agreed to assume all Ray's obligations under the franchise agreement, or, if so required, to enter into a new franchise agreement embodying essentially the same terms. However, should the consent of the Howard D. *205 Johnson Company to the proposed sale not be procured, then the agreement to purchase was to automatically terminate and the parties were to make restitutions of any benefits acquired thereby. The fair market value as of September 4, 1952, of the depreciable assets of the Visscher Corporation which were transferred to the Henning Corporation, was not less than $172,000. The value of the same assets on the books of the Visscher Corporation immediately prior to its dissolution, after depreciation to that date, was $13,752.74. The Henning Corporation took those assets on its books at their September 4, 1952 fair market value which it allocated to each asset in the same proportion which the original cost of the asset to the Visscher Corporation bore to the total original cost of all such depreciable assets to that corporation. On that basis, it claimed depreciation on certain of those assets, during the taxable years ended August 31, 1953 and 1954, in the amounts of $10,799.10 and $10,874.56, respectively. Of the amounts so claimed, respondent disallowed $10,172.22 in 1953, and $10,147.68 in 1954 on the theory that the "fair market value was not in excess of the original cost of the assets" *206 to the Visscher Corporation. During its taxable years ended August 31, 1953 and 1954, the Henning Corporation paid and accrued interest due on Henning's obligations to Ray and Fadeley which it had assumed as part of the December 4, 1952 transfer. On its returns for those years it deducted such interest in the respective amounts of $6,111.38 and $6,314.66. Respondent disallowed these deductions in full. During the taxable year ended August 31, 1954, the Henning Corporation sold to the State of New Jersey a portion of land owned by it for highway widening purposes. That land represented a portion of its Admiral Wilson Boulevard frontage, and measured approximately 272 feet in length with a width of 15 feet at one end which tapered off to 2 feet at the other, or a total area of some 1,711 square feet. The entire tract, including the portion sold, contained 122,000 square feet, and had been acquired by the Visscher Corporation from Ray on September 3, 1952 for $60,000. The Henning Corporation received $11,000 upon the sale, and incurred an expense of sale in the amount of $1,000. No portion of the amount received on account of this transaction was returned by it on its return for *207 the fiscal year ended August 31, 1954. Respondent determined the land sold had a basis to the Henning Corporation of $855.50, and that it realized a net long-term capital gain on the transaction of $9,144.50 which should be taken into income for that year. On the basis of earned surplus determined to have been available to the Henning Corporation during the calendar years 1953 and 1954, respondent determined Henning received unreported dividend income during 1953 and 1954 in the respective amounts of $41,114.80 and $24,309.81 represented by the payment by the Henning Corporation during those years of principal and interest on Henning's obligations to Ray and Fadeley which the Corporation had assumed as part of the December 4 transfer. Those principal and interest payments totalled $42,809.33 during 1953, and $32,313.55 during 1954. Respondent further determined that Henning was entitled to an interest deduction in the amount of $8,610.40 in 1953, and in the amount of $5,505.30 in 1954, representing the interest so paid during those periods as his obligations to Ray and Fadeley assumed by the Henning Corporation. The first issue concerns the proper basis for the depreciable assets *208 acquired by the Henning Corporation from Forrest K. Henning on December 4, 1952. Essentially, the question is whether the Corporation is entitled to depreciate those assets on the basis of their fair market value as of that date, $172,000, or whether it is limited to the basis which they had in the hands of the Visscher Corporation, $13,752.74. Resolution of this issue depends in part on whether, as contended by respondent, the Corporation's basis is to be determined under the provisions of section 113(a)(7) of the 1939 Code, or whether, as maintained by the petitioner, the basis for those assets should be their cost consonant with the provisions of section 113(a). [1]
*209 By its very terms, section 113(a)(7) is operative only where the particular assets involved were acquired in a statutory reorganization as defined in section 112(g)(1)(D). [2] The reasoning being that where the owners of a corporation, by a series of tax-free exchanges, merely have effected a change in their form of ownership they should not be entitled to a stepped-up basis for the property involved. . It is at once apparent that the continuity of interest in the owners of the old corporation and the owners of the new, required by section 112(g)(1)(D), does not exist here. *210 The initial step in the instant transaction was Henning's purchase from Ray of all the stock of the Visscher Corporation. At this point, there was a complete shift of control of the property from Ray to Henning. And it is this shift of control, between completely unrelated parties, which distinguishes this transaction from a statutory reorganization. . Respondent would ignore Henning's purchase from Ray, being content to view the transaction as commencing with Henning's ownership of all the Visscher stock and terminating with his ownership of all the stock of the Henning Corporation. Clearly this approach is unwarranted in light of the stipulation that Henning with a view to acquiring the business and the assets of the Visscher Corporation purchased its stock, and immediately thereafter liquidated the corporation acquiring those assets. In our judgment the purchase from Ray was the sine qua non of the transaction. Or stated differently, the purchase of stock, and the subsequent liquidation of the Visscher Corporation, constituted interdependent steps in an over-all plan the objective of which was the acquisition by Henning of the *211 business and assets of the Vischer Corporation, and the transaction [3] viewed as a whole in order to determine its tax effect. . When this is done, that is viewing the purchase of stock from Ray as an integral part of the events which took place thereafter, the continuity of interest necessary for a statutory reorganization does not exist. Immediately before the "transaction" Ray owned all the stock of the Visscher Corporation, and immediately after, Henning owned all the stock either of the same corporation or of the Henning Corporation. Thus the provisions of section 113(a)(7) play no part in determining the basis of the properties in the hands of the Henning Corporation. Because it is not immediately apparent that Henning, once having liquidated the Visscher Corporation, was obligated to turn its business properties over to his Corporation, [4] the most *212 direct approach to the issue of the Corporation's depreciation base for those properties is through atomization of the transaction into its component steps, giving to each its full tax effect. Henning paid $306,044.55 for the stock of the Visscher Corporation, then liquidated that company receiving its assets in exchange for all his stock. Thus, pursuant to the provisions of section 115(c) and section 111, [5] his basis in the properties received in liquidation was $306,044.55, their fair market value. Though this was a taxable transaction, no gain or loss was realized, Henning's basis in the stock being equal to the fair market value of the assets received less the liabilities assumed. Retaining $75,000, used by him to satisfy his promissory note to Ray of September 4, 1952, Henning then transferred the remaining properties, valued at $231,044.55, *213 to the petitioner Corporation in exchange for all its stock plus the assumption by it of liabilities of $204,499.81. The basis of these properties to the Henning Corporation, pursuant to the provisions of section 113(a)(8), [6] was $231,044.55, or their fair market value, the basis for which it now contends. *214 As noted above, the corporate petitioner contends the basis of these assets should be arrived at with reference to their cost; a position premised on the conclusion that the transfer by Henning of the properties to the Henning Corporation was an inseparable step in the over-all transaction, and thus must be integrated with the stock purchase and liquidation to arrive at the substance of what took place. Assuming petitioner to be correct, the result will be the same as reached above. When so viewed, each of the steps, from the original stock purchase through the transfer to the Henning Corporation, constitute interdependent steps in an over-all plan, the objective of which was the acquisition of the business properties of the Visscher Corporation for the benefit of the Henning Corporation. Thus, as in , they are to be integrated. When this is done, it is apparent that the essential nature of the transaction was the acquisition of property; i.e., the acquisition by the Henning Corporation of the assets of the Visscher Corporation. This being the case, the basis of the property acquired is its cost, Henning dropping out of the picture as did *215 Aal and Hartman in , and the Henning Corporation considered the purchaser. Respondent's argument that the purchase-of-assets theory is inapplicable due to the fact that the Henning Corporation continued the business of the Visscher Corporation has been adequately dealt with in (C.A. 5, January 19, 1960); (C.A. 9, October 29, 1959); and by us in North American Service Co., 33 T.C. - (January 18, 1960). Under this theory, the cost to the Henning Corporation of the properties received is the liabilities which it assumed, $204,499.81, plus the value of its stock. There is no evidence as to the value of that stock. It appears to have been a new corporation, having no other property. Under circumstances such as these, the value of the stock so issued is considered to be the equivalent of the value of the property received. at pp. 1235, 1236. See also . The corporate-petitioner received assets *216 having a fair market value of $231,044.55 subject to liabilities of $204,499.81, giving those assets a net value to the Corporation of $26,544.74. Under the rule of Illinois Water Service the value of its 800 shares of stock is $26,544.74. Thus, the cost to the Henning Corporation of the assets acquired was $231,044.55 (liabilities of $204,499.81 plus stock of $26,544.74), or their fair market value. Insofar as the allocation of the $231,044.55 among the properties received is concerned, we believe petitioner's method to be correct. As provided by the parties to the purchase agreement, $232,000 was directly allocable to the depreciable assets and land. Immediately prior to the sale, Ray sold the specific land involved to the Visscher Corporation for $60,000. Thus, the basis for depreciation purposes to the Henning Corporation for the various depreciable assets was, as now contended by it, $172,000. In light of the conclusions which we have reached above, it is clear that the liabilities assumed by the Henning Corporation upon the acquisition of the instant properties constituted a portion of the consideration furnished by it for those properties. Therefore, these liabilities constituted *217 its own obligations, and not, as determined by respondent, the personal obligations of Forrest K. Henning. Thus respondent improperly disallowed the deductions claimed by the Henning Corporation for interest paid or accrued on those obligations during its fiscal years ended August 31, 1953 and 1954. Further, respondent erroneously included the payments of principal and interest on the obligations in the income of Forrest K. Henning during the calendar years 1953 and 1954 as constructive dividends to the extent of available earnings and profits. Correspondingly, Henning is not entitled to the deduction allowed him by respondent for the interest paid on those obligations. The next issue concerns the taxable gain, if any, realized by the Henning Corporation on the sale by it of a portion of its real property to the State of New Jersey. The strip sold measured 272 feet in length, with 2 and 15-foot widths on each end, or about 1,711 square feet. The entire plot upon which the restaurant was located contained 122,000 square feet and had a basis to the Henning Corporation of $60,000. Respondent determined a cost basis of the parcel sold of $855.50 by applying a rate of 50 cents per square *218 foot for the 1,711 square feet sold. Allowing $1,000 for sale expenses, he determined the Henning Corporation realized a net long-term capital gain of $9,144.50 on the sale of that land in its fiscal year ended August 31, 1954. Petitioner contends the portion of the property sold to the State, the Admiral Wilson Boulevard frontage, constituted the most valuable part of its property, and thus, any allocation on the basis of total area is impractical. It further contends that no allowance has been made for "severance damages" paid as a result of what it refers to as the "obvious" condemnation of the property by the State. It also urges that on respondent's method of allocation the value of the entire tract as of the date of sale would be over $770,000, which clearly was not the case, because it had been purchased only a short time before for $60,000. The short answer to each of these contentions is that petitioner has not fortified them with fact. There is no evidence to indicate the Admiral Wilson Boulevard frontage was the most valuable portion of petitioner's property. Nor is there anything before us from which we might conclude the property was condemned and severance damages *219 paid. Even if there were, we do not know whether the contract of sale provided for an allocation of the proceeds between land value and damages. See . Finally, without more, the fact that respondent's method of allocation apparently results in valuing the total tract at some $770,000 does not convince us that his allocation is impracticable. In the absence of any persuasive evidence to the contrary, respondent's determination as to this issue is sustained. Decisions will be entered under Rule 50. Footnotes
*. The balance sheet of Visscher Corporation as of close of business August 31, 1952, shows among current assets notes receivable in the amount of $65,000.00, but $60,000.00 of said notes owing by Alfred C. Ray have been cancelled as consideration for conveyance by him to Visscher Corporation of lands on Admiral Wilson Boulevard, Pennsauken Township, New Jersey, valued at that sum. This conveyance made September 3, 1952, is considered in calculation of the tentative purchase price as having been made August 31, 1952.↩
1. SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; except that - * * *
(7) Transfers to Corporation. - If the property was acquired - * * *
(B) in a taxable year beginning after December 31, 1935, by a corporation in connection with a reorganization, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.↩
2. SEC. 112. RECOGNITION OF GAIN OR LOSS. * * *
(g) Definition of Reorganization. - As used in this section (other than subsection (b)(10) and subsection (1)) and in section 113 (other than subsection (a)(22)) - (1) The term "reorganization" means * * * (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred * * *. * * *
(h) Definition of Control. - As used in this section the term "control" means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.↩
3. As discussed more fully hereafter the result is the same whether the "transaction" is considered to encompass only the stock purchase and the liquidation, or is considered not to have terminated until after the transfer of the properties to the Henning Corporation.↩
4. However, the integration of this step with the prior stock purchase and liquidation might well be warranted in light of the close proximity of the transfer of those properties to the Henning Corporation in time to the preceding stock purchase and liquidation. See Paul, Selected Studies in Federal Taxation, (2d Series), pp. 200-254.↩
5. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * *
(c) Distributions in Liquidation. - Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock * * *. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. SEC. 111. DETERMINATION OF AMOUNT OF, and RECOGNITION OF, GAIN OR LOSS. (a) Computation of Gain or Loss. - The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain * * * (b) Amount Realized. - The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received. ↩
6. SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; except that - * * *
(8) Property Acquired by Issuance of Stock or as Paid-In Surplus. - If the property was acquired after December 31, 1920, by a corporation - (A) by the issuance of its stock or securities in connection with a transaction described in section 112(b)(5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), * * *
then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer * * *↩